**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO**

Civil Action No. 09-cv-162-REB-KLM

E.T. MEIJER and MARCEL WINDT,
In their Capacity as Trustees in Bankruptcy
For KPNQwest N.W., *et al.*,

        Plaintiffs,

   v.

QWEST COMMUNICATIONS
INTERNATIONAL, INC., JOHN A.
McMASTER, JOSEPH P. NACCHIO,
ROBERT S. WOODRUFF,

        Defendants.

---

**REPLY IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS</u>**

               BOIES, SCHILLER & FLEXNER LLP
               Jonathan H. Sherman
               Jonathan M. Shaw
               William C. Jackson
               5301 Wisconsin Avenue, N.W.
               Washington, D.C. 20015

               ROTHGERBER, JOHNSON & LYONS LLP
               Kenneth F. Rossman IV
               1200 Seventeenth Street, Suite 3000
               Denver, Colorado 80202

               ***Attorneys for Defendant Qwest
               Communications International Inc.***

               *(Additional counsel on signature block)*

<u>Document Filed Electronically</u>

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................ii

I.   THIS COURT SHOULD DISMISS ON
     *FORUM NON CONVENIENS* GROUNDS ......................................................... 1

     A.   Plaintiffs should not get a second bite at *forum non conveniens* ............... 1

          1.   There is no difference between the *forum non conveniens*
               law of the Third and Tenth Circuits.................................................. 2

          2.   Plaintiffs' decision to refile in Colorado does not justify
               relitigation of the *forum non conveniens* issues ............................... 3

          3.   Plaintiffs should not be permitted to keep shopping for a
               hospitable U.S. forum because Judge Brown has already
               decided that this case belongs in the Netherlands.......................... 4

     B.   Preclusion aside, *forum non conveniens* dismissal is warranted ............. 10

II.  THIS COURT SHOULD DISMISS PLAINTIFFS' RICO CLAIM .......................... 13

     A.   Plaintiffs' RICO claim is barred by the PSLRA
          because it relies on conduct actionable as securities fraud ..................... 14

     B.   Equitable tolling does not save Plaintiffs' untimely RICO claim ............... 19

          1.   Plaintiffs do not qualify for equitable tolling because
               their New Jersey complaint was not a "defective pleading"........... 20

          2.   Equitable tolling is not warranted because
               Defendants have been prejudiced by the delay ............................ 21

          3.   Equitable tolling is not warranted because the Plaintiffs
               failed to act diligently to protect their rights ................................... 22

          4.   Equitable tolling is not warranted because dismissal of the
               RICO claim would leave Plaintiffs with adequate remedies........... 23

     C.   Plaintiffs lack standing to pursue the RICO claim .................................... 24

CONCLUSION ..................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page**

*555 Corporate Ventures, Ltd. v. Ash Grove Cement Co.*, Case No. 04-2169,
    2005 U.S. Dist. LEXIS 8814 (D. Kan., Mar. 2, 2005) ................................. 1, 4, 7-8

*Allard v. Arthur Andersen & Co.*, 924 F. Supp. 488 (S.D.N.Y. 1996)............................. 25

*Amore v. Accor, S.A.,* 484 F. Supp. 2d 124 (D.D.C. 2007)........................................... 1, 9

*Bald Eagle Area Sch. Dis. v. Keystone Fin., Inc.,*
    189 F.3d 321 (3d Cir. 1999) ............................................................. 14-15, 17, 19

*Baldwin County Welcome Ctr. v. Brown,* 446 U.S. 147 (1984)................................ 21-22

*Brown v. Hartshorne Pub. Sch. Dist. No. 1,* 926 F.2d 959 (10th Cir. 1991).................. 19

*Butler v. Pollard,* 800 F.2d 223 (10th Cir. 1986) ............................................................. 1

*Chico-Velez v. Roche Prods., Inc.,* 139 F.3d 56 (6th Cir. 1998).................................... 20

*Ciralsky v. C.I.A.,* 355 F.3d 661 (D.C. Cir. 2004)........................................................... 23

*Columbraria Ltd. v. Pimienta,* 110 F. Supp. 2d 542 (S.D. Tex. 2000) .......................... 18

*Cook v. Campbell,* 482 F. Supp. 2d 1341 (M.D. Ala. 2007)........................................... 17

*Eagletech Communications, Inc. v. Citigroup, Inc.*, Case No. 07-60668,
    2008 WL 3166533 (S.D. Fla., June 27, 2008) ........................................ 14, 18-19

*Exxon Corp. v. Choo,* 817 F.2d 307 (5th Cir. 1987) ....................................................... 1

*Florida Evergreen Foliage v. E.I. DuPont de Nemours & Co.,*
    165 F. Supp. 2d 1345 (S.D. Fla. 2001)......................................................... 18-19

*Galbreath v. Dudas,* Case No. 04-2222,
    2006 WL 156701 (D.D.C., Jan. 20, 2006) .................................................. 21, 23

*Gatz v. Ponsoldt,* 297 F. Supp. 2d 719 (D. Del. 2003) .................................................. 17

*Greeen Leaf Nursery v. E.I. DuPont de Nemours & Co.*,
    341 F.3d 1292 (11th Cir. 2003).......................................................................... 18

**Cases**                                                                      **Page**

*Gschwind v. Cessna Aircraft Co.,* 161 F.3d 602 (10th Cir. 1998)................................. 2-4

*Hollinger Int'l, Inc. v. Hollinger, Inc.,* Case No. 04-C-0698,
    2004 WL 2278545 (N.D. Ill., Oct. 8, 2004)........................................................ 18

*Howard v. AOL,* 208 F.3d 741 (9th Cir. 2000) ............................................................... 18

*Ibar Ltd. v. Am. Bureau of Shipping,* Case No. 97 Civ. 8792,
    1998 WL 274469 (S.D.N.Y., May 26, 1998) ........................................................ 4

*In re CitX Corp.,* 448 F.3d 672 (3d Cir. 2006)................................................................ 25

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
    284 F. Supp. 2d 511 (S.D. Tex. 2003) ................................................................. 14

*In re Ikon Office Solutions, Inc. Sec. Litig.,* 86 F. Supp. 2d 481 (E.D. Pa. 2000)........... 19

*In re Jamuna Real Estate, LLC,* 392 B.R. 149 (Bankr. E.D. Pa. 2008)........................... 25

*Iragorri v. United Techs. Corp.,* 274 F.3d 65 (2d Cir. 2001) ......................................... 10

*Irwin v. Dep't of Veteran Affairs,* 498 U.S. 89 (1990)............................................... 20, 23

*Johnson v. Ry. Express Agency,* 421 U.S. 454 (1975).................................................... 22

*Johnston v. Multidata Sys. Int'l Corp.,* Case No. G-06-CV-313,
    2007 WL 1296204 (S.D. Tex., Apr. 30, 2007) ................................................. 2, 10

*Justice v. United States,* 6 F.3d 1474 (11th Cir. 2003) ................................................... 23

*Keeler v. Cereal Food Processors,* 250 Fed. Appx. 857 (10th Cir. 2007)...................... 19

*Kelly v. Interpublic Group,* Case No. 07 Civ. 1317,
    2007 WL 2265570 (S.D.N.Y., Aug. 2, 2007)......................................................... 4

*King v. Deutsche Bank AG,* Case No. 04-CV-1029,
    2005 WL 611954 (D. Ore., Mar. 8, 2005) ........................................................... 16

*Lacey v. Cessna Aircraft Co.,* 932 F.2d 170 (3d Cir. 1991) ............................................. 2

*Lambert v. United States,* 44 F.3d 296 (5th Cir. 1995).................................................. 23

**Cases**                                                              **Page**

*Lony v. E.I. DuPont de Nemours & Co.,* 886 F.2d 628 (3d Cir. 1989) ............................ 2

*Marathon Oil Co. v. A.G. Ruhrgas,* 145 F.3d 211 (5th Cir. 1998).................................... 9

*Minton v. Buckeye Rural Electric Coop., Inc.,* Case No. 05-CV-391,
    2006 WL 2583348 (S.D. Ohio, Sept. 6, 2006) .................................................... 21

*Mizokami Bros. of Ariz., Inc. v. Mobay Chem. Corp.,* 660 F.2d 712 (8th Cir. 1981) ........ 6

*Needham v. Phillips Petroleum Co. of Norway,* 719 F.2d 1491 (10th Cir. 1983)........... 13

*O'Donnell v. Vencor, Inc.,* 466 F.3d 1104 (9th Cir. 2006)............................................... 20

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981)........................................................... 11

*Reed v. Norfolk and W. Ry. Co.,* 635 F. Supp. 1166 (N.D. Ill. 1986) ............................. 21

*Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140 (S.D.N.Y. 2004)............................... 9

*S.E.C. v. Zandford,* 535 U.S. 813 (2002).................................................................15-16

*Sell v. Zions First Nation Bank*, Case No. 05-CV-0684,
    2006 WL 322469 (D. Ariz., Feb. 9, 2006) .......................................................... 17

*Turgeau v. Admin. Review Bd.,* 446 F.3d 1052 (10th Cir. 2006) ................................... 22

*Tyrone Area Sch. Dist. v. Mid-State Bank & Trust Co.*, Case No. Civ. 98-881,
    1999 WL 703729 (W.D. Pa., Feb. 9, 1999) ........................................................ 19

*Villar v. Crowley Maritime Corp.,* 782 F.2d 1478 (9th Cir. 1986) ..................................... 9

*Villar v. Crowley Maritime Corp.,* 990 F.2d 1489 (5th Cir. 1993) .................................... 9

*Windt v. Qwest Communications Int'l, Inc.,* 544 F. Supp. 2d 409 (D.N.J. 2008)..... *passim*

*Windt v. Qwest Communications Int'l, Inc.,* 529 F.3d 183 (3d Cir. 2008) ............... *passim*

**Statutes and Rules**                                                                    **Page**

11 U.S.C. § 1509(e) ....................................................................................... 10

15 U.S.C. § 78j(b)....................................................................................... 16-17

18 U.S.C. § 1964(c)....................................................................................... *passim*

17 C.F.R. § 240.10b-5 (2000) ....................................................................... 15

In their Memorandum in Opposition to Defendants' Motion to Dismiss [Doc. No. 27] filed June 17, 2009, Plaintiffs mischaracterize the relevant law, the District of New Jersey and Third Circuit opinions dismissing and sustaining the dismissal of this same lawsuit, and Defendants' arguments.  These distortions underscore the appropriateness of dismissal in this District.

## I.    THIS COURT SHOULD DISMISS ON *FORUM NON CONVENIENS* GROUNDS.

Plaintiffs acknowledge (as they must) that preclusion principles apply in the *forum non conveniens* context, but argue that preclusion should not apply here because refiling the same complaint in this District supposedly raises different issues than those already decided by Judge Brown and affirmed by the Third Circuit.  Based on this argument, Plaintiffs then assert that Defendants have not contended or shown that it would be inconvenient to litigate this case in Colorado.  Neither argument holds water.

### A.  Plaintiffs should not get a second bite at *forum non conveniens*.

As a threshold matter, Plaintiffs do not seriously dispute that, as the Tenth Circuit explained in *Butler v. Pollard*, 800 F.2d 223, 225 (10th Cir. 1986), "issue preclusion is required" when its prerequisites are met.[1]  *Id.*  Instead, Plaintiffs argue that Judge

---

[1]    In the *forum non conveniens* context, preclusion principles "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and . . . prevent serial forum-shopping and piecemeal litigation."  *Amore v. Accor, S.A.*, 484 F. Supp. 2d 124, 128 (D.D.C. 2007) (quotation omitted).  Accordingly, federal courts must give *forum non conveniens* dismissals preclusive effect unless different legal rules apply or there has been a material change of fact.  *555 Corporate Ventures, Ltd. v. Ash Grove Cement Co.*, Case No. 04-2169, 2005 U.S. Dist. LEXIS 8814, at *7 (D. Kan., Mar 2, 2005) ("Federal circuit courts have held that a plaintiff cannot relitigate a forum non conveniens dismissal unless the relevant facts have changed.").

Plaintiffs misleadingly and inaccurately cite *Exxon Corp. v. Choo*, 817 F.2d 307, 312 (5th Cir. 1987), *rev'd on other grounds*, 486 U.S. 140 (1988), for the proposition that *forum non conveniens* rulings are generally not given preclusive effect. (Opp. at 19.)  As the Fifth Circuit emphasized, "*issue preclusion is*

Brown's opinion should not have preclusive effect because (a) the *forum non conveniens* law of the Tenth Circuit differs from that of the Third Circuit; (b) the fact that Qwest is located in Colorado and not New Jersey is a sufficiently "material" factual change to warrant having yet another court consider the issue; and (c) the prior courts considered only whether this case belongs in New Jersey and thus did not decide if it would be convenient here.  Those arguments are meritless.

### 1.  *There is no difference between the* **forum non conveniens** *law of the Third and Tenth Circuits.*

The Tenth and Third Circuits apply the same *forum non conveniens* law, including with respect to the two supposed areas of difference that Plaintiffs identify.[2] First, Plaintiffs assert (Opp. at 22-23) that the two circuits differ on how much deference to accord a foreign plaintiff's forum choice, but fail to mention that in *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602 (10th Cir. 1998), the Tenth Circuit addressed precisely that issue *by citing to and quoting extensively from Third Circuit opinions* and applying the same standard that Judge Brown and the Third Circuit did in this case.  *Id.* at 608 (*citing Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989)

---

*appropriate if the issue actually remains the same.*"  817 F.2d at 312 (emphasis in original.)  And, indeed, in that case the Fifth Circuit *affirmed* a federal district court in Houston that had previously dismissed a maritime case (with supplemental state law claims) on *forum non conveniens* grounds and then enjoined the plaintiff from refiling the state law claims (without the maritime claim) in Texas state court, holding that the district court's prior dismissal on *forum non conveniens* grounds should be accorded preclusive effect. *Id.* at 324-25.

[2]     This is hardly surprising since all circuits must apply the tests established by the Supreme Court. Indeed, this point is underscored by one of the cases that Plaintiffs cite.  (Opp. at 19 n.7.)  In *Johnston v. Multidata Sys. Int'l Corp.*, Case No. G-06-CV-313, 2007 WL 1296204, at *6-8 (S.D. Tex. Apr. 30, 2007), *rev'd on other grounds*, 523 F.3d 602 (5th Cir. 2008), the court declined to find an earlier *state* court *forum non conveniens* ruling preclusive, but was careful to emphasize that its decision would have been different had the earlier decision been rendered by a federal court.  *Id.* at *7.

and *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 179 (3d Cir. 1991)).

Second, Plaintiffs contend that (a) Judge Brown and the Third Circuit rejected their argument that suing in New Jersey, home to half the defendants, entitled them to extra deference and (b) the Tenth Circuit would apply a different legal rule that would grant them such extra deference.  (Opp. at 23.)  In truth, however, the legal rule is the same in both circuits.  Neither has adopted a blanket rule that suing in a forum that is home only to some defendants must weigh against dismissal.  Rather, each circuit has affirmed the district court's discretion to give that fact the weight it believes appropriate in a given case.  Thus, in *Gschwind,* the Tenth Circuit rejected the plaintiff's contention that the district court had abused its discretion by not "consider[ing] that [one defendant] was a forum resident," and affirmed the *forum non conveniens* dismissal:

> In this case, the forum resident, Cessna, was not the only defendant arguing for dismissal based on *forum non conveniens*. . . . Thus, the strength of Plaintiff's argument is diluted by at least one-half. It is further diluted by the fact that Cessna is an international organization; the fact that a defendant is a resident of the forum has more weight in the *forum non conveniens* analysis when the defendant is an individual rather than a broad-based corporation.

161 F.3d at 609.  And the Third Circuit rejected Plaintiffs' similar contention here for much the same reason.  *Windt v. Qwest Communications Int'l, Inc. ("Windt II")*, 529 F.3d 183, 191 (3d Cir. 2008), *cert. denied*, 129 S. Ct. 904 (U.S. Jan. 12, 2009) (holding that the district court properly took this factor into account under "the particular circumstances of this litigation").

### 2. *Plaintiffs' decision to refile in Colorado does not justify relitigation of the* **forum non conveniens** *issues.*

Nor has there been any change of fact whatsoever—material or immaterial—as a

result of Plaintiffs' decision to refile in Colorado.  Qwest has at all relevant times been

headquartered in Colorado, yet only now have Plaintiffs decided that Colorado is the

logical forum.  A belated epiphany is not a change of fact and does not justify relitigation

of a *forum non conveniens* issue that has already consumed the time and attention of

the District of New Jersey, the Third Circuit, and the Supreme Court.  As Judge Murguia

held in rejecting the argument that such relitigation was justified by a move to the

corporate defendant's home district:

> [T]he court does not believe the underlying facts have materially changed.
> The only fact that has changed is 555's purported realization that Ash
> Grove's corporate headquarters are located in Kansas.  However, this is
> not a "change."  Ash Grove's offices have not moved from or to Overland
> Park, Kansas, and its location has never been a secret to 555.

*555 Corporate Ventures*, 2005 U.S. Dist. LEXIS 8814, at *10.[3]

### 3. Plaintiffs should not be permitted to keep shopping for a hospitable U.S. forum because Judge Brown has already decided that this case belongs in the Netherlands.

Plaintiffs should not be permitted to consume judicial time and resources in court

after court.[4]  They could have sued in this District to begin with.  Or, having sued in New

---

[3]    Plaintiffs cite two unpublished opinions by a single judge in New York as supporting the proposition that refiling in a defendant's home forum justifies relitigation of a *forum non conveniens* ruling.  (Opp. at 20-21.)  Neither *Ibar Ltd. v. Am. Bureau of Shipping*, Case No. 97 Civ. 8792, 1998 WL 274469 (S.D.N.Y., May 26, 1998), nor *Kelly v. Interpublic Group*, Case No. 07 Civ. 1317, 2007 WL 2265570 (S.D.N.Y., Aug. 2, 2007), supports that conclusion here.  In both cases, New York was home to the only defendant.  Here, by contrast, there are two defendants who do not reside in Colorado, just as in New Jersey there were two defendants who did not reside there.  As noted above, the Tenth Circuit held in *Gschwind* that the force of arguments based on the defendant's residence is "diluted" when the defendants are not all forum residents.  *Gschwind*, 161 F.3d at 608-09.  And in *Ibar*, the court relied heavily on the fact that the defendant had agreed to arbitrate in New York and thus was deemed to have agreed that New York was a convenient forum in which to determine the enforceability of the arbitration agreement.  1998 WL 274469 at *4.  No defendant in this case has agreed that this is a convenient forum for this dispute.

[4]    As we explained at pages 12-14 of our opening brief, Plaintiffs' claim (Opp. at 6) that the Third Circuit held that "its decision was *not* to be construed as affecting the right of the [Plaintiffs] to file suit in another federal district" is flatly incorrect.  The Third Circuit made clear only that it was *not* deciding what

Jersey, they could have asked Judge Brown to consider transfer to this District as an alternative to a *forum non conveniens* dismissal. But they did neither. Instead, they criticize Judge Brown for failing explicitly to determine, *sua sponte,* whether transferring this case to Colorado would change the result of his analysis.

That criticism rests on a profound mischaracterization of Judge Brown's opinion, which addressed *both* national *and* local interests before concluding not just that this Dutch-centered case did not belong in New Jersey but also that it belonged in the Netherlands. Indeed, Judge Brown *expressly* held that this case belongs in "the alternative forum" of the Netherlands:

> Viewed through the prism of conveniences available to Plaintiffs in Plaintiffs' home forum and potential dire exhaustion of Defendants' resources through a cluster of transatlantic litigations, Plaintiffs' action appears to be "oppressive or vexatious," and the balance of the private and public interest factors *"clearly points towards trial in the alternative forum,"* thus, supporting dismissal.

*Windt v. Qwest Communications Int'l, Inc. ("Windt I")*, 544 F. Supp. 2d 409, 429 (D.N.J. 2008) (reissued opinion) (emphasis added). Critically, the reasons Judge Brown gave for that conclusion—such as the prospect of having to litigate related issues simultaneously on both sides of the Atlantic—apply with equal force here.

Contrary to Plaintiffs' assertion that Judge Brown "neither considered nor decided how Colorado (or even the United States generally) compares in terms of convenience to the Netherlands," (Opp. at 8), his opinion leaves no room for doubt that he carefully

---

preclusive effect should be accorded the dismissal it was affirming—an issue that was not before it but is squarely before this Court. *Windt II*, 529 F.3d at 192 ("Thus, the conclusion we reach in this case does not *necessarily* mean that this action may not be maintainable in another federal district.") (emphasis added). Tellingly the Third Circuit immediately followed that statement with a string cite to cases discussing when *forum non conveniens* decisions are to be accorded preclusive effect. *Id.*

considered *both* local *and* national factors.  For example:

- "[T]he United States and the community of the District of New Jersey have little interest in the resolution of this case . . . Conversely, the Netherlands has strong contacts with this case, since that country has substantial interests in adjudicating claims brought by the trustees of its own corporation (which was created as a joint-venture with another Dutch corporation), especially in view of the bankruptcy effect suffered by the local Dutch community consisting of KPNQwest's employees, shareholders, consumers of KPNQwest's product, as well as KPNQwest's suppliers and creditors."  *Windt I*, 544 F. Supp. 2d at 423-24.

- "The gist of the case at bar concerns the allegations of fraud and mismanagement of a Dutch business entity by a board member and executives of *that* corporation, and by *that* corporation's controlling holder. The fact that two of these defendants are domiciled in the state of New Jersey does not transform the case into a 'local dispute,' <u>nor can the facts that four Board meetings took place somewhere in the United States and Defendants, while being present in the United States, took part in five international conference calls, transform the case into an 'American' dispute.</u>  If this Court were to find otherwise, any business transaction involving a meeting in the United States . . . would automatically be 'Americanized' . . . making the United States federal court system the surrogate court for the entire modern world global economy."  *Id.* at 423 (italicized emphasis in the original; underlined emphasis added).

- Plaintiffs "seem to have no intention of moving their personal or business interests *into the United States* (or to the state of New Jersey in particular)."  *Id.* at 420 (emphasis added).

- Litigating in the United States would be "oppressive or vexatious" to the defendants for numerous reasons, "since Defendants would be forced to stretch their resources over both sides of the ocean."  *Id.* at 429.

Plaintiffs' position (Opp. at 18-22) appears to be that because Judge Brown did

not state in so many words that no other judicial district would be a convenient forum,

they are free to keep filing the same complaint in district after district until some judge

agrees with them.  They rely primarily on *Mizokami Bros. of Ariz., Inc. v. Mobay Chem.

Corp.*, 660 F.2d 712, 716 (8th Cir. 1981), where the court declined to accord preclusive

effect to an earlier dismissal that had considered *only* whether the litigation in the first U.S. forum was convenient.  As just shown in the prior paragraph, however, the key factual premise underlying that opinion—that the initial decision was based only on local considerations—is absent here, since Judge Brown expressly took into account the national interests and contacts and based his decision that this case belongs in the Netherlands on considerations that apply with equal force in this District.  This is a critical distinction and, indeed, it was on this very basis that Judge Murguia recently distinguished *Mizokami*. *555 Corporate Ventures,* 2005 U.S. Dist. LEXIS 8814, at *10-11 ("[T]he [first *Mizokami*] court determined only that Arizona was not a convenient forum.  The court . . . neither discussed nor decided which forum would in fact pass the *forum non conveniens* test.  The case at hand differs, in that the Oregon court specifically held that this lawsuit should be pursued in [Canada].").  Significantly, the language from the Oregon court's opinion that Judge Murguia identified as holding that the case belonged in Canada parallels Judge Brown's holding that this case belongs in the Netherlands:

| Oregon Court | Judge Brown |
| --- | --- |
| [T]he Oregon court specifically held that this lawsuit should be pursued in British Columbia.  After an exhaustive analysis, the court concluded:<br><br>"I find that B.C. [British Columbia] is the more convenient forum because (1) the claims arose in B.C.; (2) access to evidence, particularly identified witnesses, is more readily available in B.C.; (3) B.C. law will be applied to the case; (4) any injunctive relief affecting the land would be ordered and enforced in B.C., the jurisdiction where the land is located; and (5) adjudicating the case in B.C. avoids the possibility of this court interfering in the ongoing proceedings before the Gold Commissioner in B.C."<br><br>*555 Corporate Ventures*, 2005 U.S. Lexis 8814, at *11 (quoting Findings and Recommendations issued by Magistrate Judge Dennis Hubel on May 5, 2003 and adopted by District Judge Robert E. Jones on July 7, 2003 at ¶ 20). | It is illogical for a bankruptcy trustee to assert that it would be more convenient to bring an action thousands of miles away, while this trustee: (a) has to play a part in the related bankruptcy proceedings in his home forum, and (b) has his defendants already brought into his home forum on two other actions which are nearly identical in nature to the action the trustee desires to pursue, and in one of which the trustee has already been ordered to appear. Since one can hardly perceive any convenience in having multiple massive litigations on both sides of the Atlantic, this Court discerns little evidence of convenience to Plaintiffs in Plaintiffs' decision to file this action with this Court and, thus, accords Plaintiffs' forum selection a low degree of deference.<br><br>* * *<br><br>[I]n the case at bar, Defendants are already involved in two litigations in Amsterdam, and in the very same court that would entertain Plaintiffs' Dutch action if Plaintiffs chose to sue Defendants in the Netherlands. Given these circumstances, it is not surprising that Defendants see Plaintiffs' litigation in New Jersey as "oppressive or vexatious," since Defendants would be forced to stretch their resources over both sides of the ocean by: (1) hiring different counsel to meet two different sets of bar admission requirements and two different sets of procedural rules; (2) losing the opportunity to seek joinder of actions; (3) flying witnesses and themselves across the Atlantic both ways on regular basis, thus incurring substantial travel and accommodation expenses; and (4) having to translate *all* relevant documents and testimony, etc. Viewed through the prism of conveniences available to Plaintiffs in Plaintiffs' home forum and potential dire exhaustion of Defendants' resources through a cluster of transatlantic litigations, Plaintiffs' action appears to be "oppressive or vexatious," and the balance of the private and public interest factors "clearly points towards trial in the alternative forum," thus, supporting dismissal.<br><br>*Windt I*, 544 F. Supp. 2d at 421, 429 (emphasis in the original). |

Tellingly, Judge Murguia did *not* require a finding that Canada was the only convenient forum *nor* a specific finding that it was more convenient than Kansas to find preclusion appropriate.  Rather, it was enough that the considerations underlying the conclusion that Canada was a more convenient forum than Oregon applied equally in Kansas.[5]

Beyond the fact that Judge Brown's reasons for dismissing this case apply equally here, there is sound reason to require that a plaintiff expressly identify, by means of an alternative request for transfer, any U.S. forum that they want the first district court to consider in deciding the *forum non conveniens* issue.  It should not be incumbent on that first district court either to guess which alternate U.S. forum(s) plaintiff may have in mind or to run through a checklist of each judicial district to decide if one of them might be more convenient, when a plaintiff can so easily raise the issue directly.  Indeed, *Mizokami* has been distinguished and limited to its facts precisely because of the inefficiencies it invites:

> If all a plaintiff has to do, if one U.S. district court dismisses its claim under the doctrine of *forum non conveniens*, is keep re-filing it in other U.S. district courts until one decides to retain the case, then the decision of the original federal court would be devalued, precious judicial resources would be wasted, and already costly litigation would become even more

---

[5]    The same was true of the New York opinion given preclusive effect in *Amore*, 484 F. Supp. 2d at 128, which likewise did not discuss the convenience of the forum (DC) in which the plaintiff refiled, but was nonetheless accorded preclusive effect because the considerations underlying it—including the need to assert contribution claims abroad and the strong interest of the foreign forum in a rail accident on its soil that injured the American plaintiffs—applied with equal force to DC.  *See Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 163-63 (S.D.N.Y. 2004).

And the Fifth Circuit took the same common sense view in *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1498 (5th Cir. 1993), *abrogated on other grounds by Marathon Oil Co. v. A.G. Ruhrgas*, 145 F.3d 211, 222 (5th Cir. 1998).  In *Villar,* the Fifth Circuit affirmed the district court's holding that the Ninth Circuit's prior *forum non conveniens* dismissal had preclusive effect.  Importantly in that connection, the Fifth Circuit characterized the Ninth Circuit's opinion as having "found that no forum in the United States was convenient" *id., although nowhere in the Ninth Circuit's opinion is there any specific language so finding.  See Villar v. Crowley Maritime Corp.*, 782 F.2d 1478 (9th Cir. 1986).

expensive.   There  is  no  doubt  that  such  a  result  would  encourage
pernicious forum shopping.  *Mizokami Brothers* should thus be confined to
its facts.

*Johnston*, 2007 WL 1296204, at *7 (internal citation omitted).

### B.  Preclusion aside, *forum non conveniens* dismissal is warranted.

Preclusion aside, this case belongs in the Netherlands and should be

dismissed—again—on *forum non conveniens* grounds.  Plaintiffs' attempts to reargue

the points decided against them in New Jersey are without merit.

As we showed at pages 16-18 of our opening brief, a foreign plaintiff's forum

choice warrants limited deference, particularly where, as here, that plaintiff is engaged

in forum shopping to take advantage of American treble damages law.[6]

Plaintiffs' opposition is premised on the insupportable contention that Defendants

do not even claim that litigating this Dutch-centered case in Colorado would be

inconvenient.  That contention is nothing short of bizarre, given the repeated showing in

our opening brief that litigating here would be oppressive and vexatious in light of the

related proceedings pending and to be pursued[7] in the Netherlands:

---

[6]   Neither the FCN Treaty nor Chapter 15 of the bankruptcy code—each of which Plaintiffs contend should add weight to their forum choice—changes the analysis.  As we showed in our opening brief at 16-17, the law is clear that FCN treaties give citizens of signatory countries at most the lower level of deference due expatriate Americans.  Plaintiffs make no effort to rebut that showing, nor could they, given that even the one case they cite—*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 n.5 (2d Cir. 2001) (*en banc*)—so held.  As for Chapter 15, Judge Brown correctly rejected that argument, *Windt I*, 544 F. Supp. 2d at 432, and the Third Circuit saw no need even to address it, which is unsurprising since Plaintiffs cite no cases adopting their position and failed to identify any statutory text or legislative history supporting it. Moreover, Chapter 15 itself expressly contradicts Plaintiffs' claim that it displaces or modifies generally applicable *forum non conveniens* law.  *See* 11 U.S.C. § 1509(e) ("a foreign representative is subject to applicable nonbankruptcy law").

[7]   In footnote 5 of their brief, Plaintiffs assert that Defendants do not claim that there would be any difficulties associated with bringing contribution claims relating to the Plaintiffs' Dutch-law claims in the Netherlands while defending the underlying claim here.  That is simply false.  Our arguments about the

- "[G]iven the pendency of ongoing, related litigation and an investigation in the Netherlands (together with Defendants' need to assert contribution claims against Dutch entities and against other individuals likely to contest the jurisdiction of American courts) forcing Defendants to litigate simultaneously on both sides of the Atlantic would be oppressive or vexatious." Opening Br. at 2.

- "[T]he related proceedings pending in the Netherlands . . . and Defendants' contemplated contribution claims against third-parties there . . . strongly favor a Dutch forum, where the Dutch courts can coordinate proceedings as appropriate." Opening Br. at 19.

- "There is no way for Defendants to bring the ongoing Dutch proceedings here, and it is likely that foreign third-parties sued for contribution would resist this Court's jurisdiction . . . such a scenario not only represents a waste of judicial resources, but also creates a risk of inconsistent judgments." Opening Br. at 19.

Plaintiffs offer little response other than to assert that the burdens associated with litigating these related proceedings are entitled to little consideration because they "bear very little in common with this lawsuit." (Opp. at 15.)[8]  But these Dutch actions are, as two courts have found, substantially similar and closely related to this action.  *Windt I,* 544 F. Supp. 2d at 421; *Windt II*, 529 F.3d at 189.

The burdens associated with litigating contribution claims and related cases on both sides of the Atlantic establish that the private interest factors heavily favor a Dutch forum.  Indeed, in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 (1981), the Supreme

---

difficulties related to bringing contribution claims abroad if this case remains here—for example, the risk of inconsistent judgments—relate *only* to Plaintiffs' Dutch-law claims, since, as Plaintiffs themselves note (also in n. 5), RICO does not permit contribution claims.

[8]    Plaintiffs also assert that the KPNQwest-related proceedings pending in the United States somehow weigh in favor of keeping this action in the United States.  But there is virtually no related litigation pending in the United States.  The Second Circuit appeal referenced in footnote 3 of our opening brief has been dismissed, leaving the *Grand* case as the only such case.  And *Grand* is an Arizona state court case that, as the Third Circuit held, is "not  . . . as significant or substantial as this litigation or the litigation in the Netherlands," *Windt II*, 529 F.3d at 197, and is on appeal following a dismissal on the merits.

Court expressly recognized that the burden of such trans-Atlantic litigation is, standing alone, sufficient to justify dismissal on *forum non conveniens* grounds.  Plaintiffs assert that there are few burdens because *some* key witnesses are located in America.  (Opp. at 13 n. 2.)  But this does not change the fact that many of these witnesses are or will be parties to the Dutch proceedings.  Nor does it change the fact—unsurprising given that this was a Dutch joint venture that went bankrupt in the Netherlands—that there are at least as many or more equally important witnesses in the Netherlands, including supposedly defrauded board members, KPN and its personnel, and KPNQwest's accountants, bankers, and consultants.  *Windt I*, 544 F. Supp. 2d at 425-26.

Nor does the fact that many Qwest documents are in Colorado mean that Colorado is a more convenient forum.  As this Court knows, Qwest commonly produces its documents in electronic format, thus avoiding the necessity of on-site document inspection in Colorado or elsewhere.  Indeed, Plaintiffs acknowledge as much.  (Opp. at 13 (recognizing that "the significance of document location" is less because "many of the relevant documents will no doubt be available in electronic format.").  By contrast, there are (in addition to KPNQwest's vast electronic files) more than 2000 boxes of hard-copy documents in the Netherlands—which Plaintiffs have refused to bring to the United States.  *Windt I*, 544 F. Supp. 2d. at 426 n.24.  In any event, Judge Brown expressly found that this factor was essentially neutral here.  *Id.*

The related Dutch proceedings also underscore that the public interest factors heavily favor dismissal.  As two courts have already recognized, the Netherlands has a much stronger interest than does the U.S. in this *Dutch* dispute  *Windt I*, 544 F. Supp.

12

2d at 424 ("[T]he Netherlands has strong contacts with this case, since that country has substantial interests in adjudicating claims brought by the trustees of its own corporation. . . . especially in view of the bankruptcy effect suffered by the local Dutch community. . . ."); *Windt II*, 529 F.3d at 193 ("[It] cannot be denied that the Netherlands has a substantial interest in resolving this dispute as it involves the alleged mismanagement of a Dutch company by Supervisory Board members and executives of that Dutch company.").

Finally, Plaintiffs' half-hearted contention (Opp. at 9 n.1) that their RICO claim "militates against" dismissal is without merit. The case they rely on—*Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1491, 1493 (10th Cir. 1983) (*forum non conveniens* inapplicable if *no* foreign law governs)—provides no support for that position. Nor do Plaintiffs even try to rebut our showing (Opening Br. at 16 n.6) that meritless American-law claims receive no weight in the *forum non conveniens* analysis.

In short, this Dutch-centered lawsuit belongs in the Netherlands, alongside the related proceedings.

## II.    THIS COURT SHOULD DISMISS PLAINTIFFS' RICO CLAIM.

Plaintiffs' RICO claim is without merit for three independently sufficient reasons: (1) it relies on conduct that is "actionable as securities fraud" and hence is barred by the PSLRA; (2) it is time-barred; and (3) Plaintiffs lack standing because they fail to plead any injury compensable under RICO.

### A.    Plaintiffs' RICO claim is barred by the PSLRA because it relies on conduct actionable as securities fraud.

As we showed in our opening brief, Plaintiffs' RICO claim is barred by the

PSLRA.  In 1995, to stop the widespread conversion of securities claims into RICO claims, *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999), Congress passed the Private Securities Litigation Reform Act ("PSLRA") which amended the civil RICO statute to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a [RICO violation]."  18 U.S.C. § 1964(c); Pub. L. No. 104-67, § 107, 109 Stat. 737, 758 (1995).  "To prevent circumvention of congressional intent, courts have interpreted the PSLRA amendment broadly."  *Eagletech Communications, Inc. v. Citigroup, Inc.*, Case No. 07-60668, 2008 WL 3166533, at *9 (S.D. Fla., June 27, 2008) (citations omitted).

Plaintiffs' three responses cannot overcome the PSLRA's RICO bar.  First, Plaintiffs claim that they are not asserting a securities claim because their allegations involve "the defrauding of KPNQwest," not Qwest.  (Opp. at 28.)  This argument ignores the language and purpose of the PSLRA-RICO bar.  "The RICO Amendment's focus was on completely eliminating the so-called treble damage blunderbuss of RICO in securities fraud cases."  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d. 511, 619 (S.D. Tex. 2003) (internal quotations omitted).  "Thus if Defendants' alleged misconduct to support a claim is characterized by the plaintiff as wire, mail, or bank fraud, but also amounts to securities fraud, the court should not permit a surgical presentation of the cause of action to undermine the congressional intent behind the RICO Amendment."  *Id.* (internal quotations omitted).

Plaintiffs themselves assert "that among the reasons Defendants defrauded KPNQwest was because it might reveal the failure of Qwest's own business model and because Qwest wanted to maintain the value of KPNQwest on its own books[.]"  (Opp. at 28.)  This is quintessentially a description of conduct that would constitute the use, "in connection with the purchase or sale of any security," of "any device, scheme, or artifice to defraud" or any other "act, practice, or course of business" that "operates . . . as a fraud or deceit"—*i.e.* securities fraud.  17 C.F.R. § 240.10b-5 (2000); *see S.E.C. v. Zandford,* 535 U.S. 813, 820 (2002) (noting that "the securities sales and the respondent's fraudulent practices were not independent events[,]" and concluding "it is enough that the scheme to defraud and the sale of securities coincide"); *Bald Eagle*, 189 F.3d at 330 (holding that "conduct undertaken to keep [an ongoing] securities fraud scheme alive" constitutes "conduct undertaken in connection with the purchase of a security").  Others who bought or sold KPNQwest or Qwest stock during the period of Qwest's alleged "defrauding of KPNQwest" (Opp. at 28) have alleged that Qwest's efforts to prop up the value of KPNQwest (and hence the value of Qwest) constituted securities fraud.  Therefore Plaintiffs' RICO claim "would have been actionable as fraud in the purchase or sale of securities" and should be dismissed.  18 U.S.C. § 1964(c).

Plaintiffs argue (Opp. at 32) that the cases distinguish between RICO claims based on conduct actionable as securities fraud—which they admit are barred—and those based on conduct "'intrinsically connected to, and dependent upon' conduct actionable as securities fraud"—which they contend are not barred—citing to some loose dictum in *Bald Eagle*.  Such a reading of *Bald Eagle* cannot be squared with the

Supreme Court's later decision in *Zandford*:  If "[i]t is enough that the scheme to defraud and the sale of securities *coincide*," *Zandford*, 535 U.S. at 822 (emphasis added), then conduct "'intrinsically connected to, and dependent upon, conduct actionable as securities fraud" is necessarily barred.  *See King v. Deutsche Bank AG*, Case No. 04-CV-1029, 2005 WL 611954, at *21 (D. Ore., Mar. 8, 2005) ("To the extent that the *Bald Eagle* court applied a stricter standard than the *Zandford* court's requirement that the scheme to defraud and the sale of securities 'coincide,' the *Bald Eagle* standard has been overruled by the later Supreme Court opinion in *Zandford*.").[9]

Second, Plaintiffs assert that the PSLRA's bar on RICO claims for "fraud *in* the purchase or sale" of securities, 18 U.S.C. § 1964(c), is somehow narrower than the scope of Section 10(b) and Rule 10b-5, which reaches fraud "*in connection with* the purchase or sale" of securities, 15 U.S.C. § 78j(b) (emphasis added).  (Opp. at 29-30.)  This argument—which Plaintiffs do not cite a single case to support—ignores the language of the PSLRA-RICO bar and contravenes the relevant caselaw.  The PSLRA-RICO bar expressly prohibits Plaintiffs from relying on "*any* conduct that *would have been actionable* as fraud in the purchase or sale of securities[.]"  18 U.S.C. § 1964(c) (emphasis added).  The question is therefore: what conduct "would have been actionable as fraud in the purchase or sale of securities"?  And the answer is supplied

---

[9]    Plaintiffs also claim that they "have not alleged anything fraudulent or improper" about a particular purchase of KPNQwest stock by Qwest.  (Opp. at 28 n.12.)  But Plaintiffs otherwise ignore the showing in our opening brief (at 22-24) that their Complaint alleges a fraudulent scheme involving the use of multiple stock offerings and purchases to gain control of KPNQwest and financing activities (such as bond offerings) based on a fraudulently inflated stock price—allegations which demonstrate that Plaintiffs' RICO claim is barred by the PSLRA.  *See, e.g.,* Compl. ¶¶ 2-3, 7-11, 54, 59-61, 108, 134-136, 142-43, 154, 172, 186, 197, 230, 241-52, 265-6, and 332.

by Section 10(b) and Rule 10b-5—namely, fraudulent or deceptive practices "in connection with" the purchase or sale of securities. 15 U.S.C. § 78j(b). As one recent opinion explained:

> The terms "in connection with . . . any . . . scheme . . . to defraud," and "actionable as fraud in the . . . sale of securities," at first glance, do not appear to appear to perfectly overlay, but on closer analysis, they do. This is because:
>
> (1) It is a violation of Section 10(b) and Rule 10b-5 to commit fraud "in connection with" the purchase or sale of any security;
>
> (2) If one violates Section 10(b) and Rule 10b-5, they have committed securities fraud;
>
> (3) Therefore, one way to define securities fraud is fraud in connection with the sale of any security.
>
> (4) Conduct that would have been actionable as fraud in the purchase or sale of securities may not serve as a predicate offense under the civil RICO statute;
>
> (5) Conduct that would have been actionable as fraud in the purchase or sale of securities is conduct for which one could be found liable for securities fraud;
>
> (6) Therefore, conduct that is actionable as securities fraud is conduct that occurred in connection with the sale of securities.

*Sell v. Zions First Nation Bank*, Case No. 05-CV-0684, 2006 WL 322469, at *9 (D. Ariz., Feb. 9, 2006).[10]

Plaintiffs also assert that the PSLRA-RICO bar does not apply because they lack standing to assert a securities claim. (Opp. at 27.) But they cite no authority for this

---

[10]    *See also Bald Eagle*, 289 F.3d at 329-30; *Cook v. Campbell*, 482 F. Supp. 2d 1341, 1550-51 (M.D. Ala. 2007) (analyzing scope of § 10b and Rule 10b-5 to determine whether "conduct would have been actionable as fraud in the purchase or sale of securities"); *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 730 (D. Del. 2003) (dismissing RICO claim because "the conduct the plaintiffs allege to be fraudulent would fully fall within the scope of § 10(b) and Rule 10b-5").

point, which the federal courts have uniformly rejected.[11]

Third, Plaintiffs admit that some Qwest and KPNQwest shareholders filed securities claims against Qwest based on Plaintiffs' allegations, but argue that "the mere fact that some shareholders made efforts to build on [Plaintiffs'] allegations does not demonstrate that [Plaintiffs'] own claims would have been actionable as fraud 'in connection with' or 'in' the sale of securities." (Opp. at 34-35.)  This argument fails:

> In determining whether the RICO conduct is actionable, courts also consider whether there are any pending shareholder securities class actions or SEC actions which allege the same conduct asserted in the RICO action. Where the SEC or the class plaintiffs base their securities fraud claims on the conduct as alleged in the RICO action, courts generally find that the RICO claims are "actionable" as securities fraud.

*Hollinger Int'l, Inc. v. Hollinger, Inc.*, Case No. 04-C-0698, 2004 WL 2278545, at *7

(N.D. Ill., Oct. 8, 2004).[12]

As Defendants noted, that is precisely the situation here.  The other shareholders did not merely "ma[k]e efforts to build on [Plaintiffs'] allegations," (Opp. at 34-35); they relied on precisely the same conduct as alleged by Plaintiffs—Qwest's alleged use of

---

[11]    *See Howard v. AOL*, 208 F.3d 741, 749 (9th Cir. 2000) (PSLRA barred RICO claims where securities fraud claims "could be brought by a plaintiff with proper standing."); *Eagletech*, 2008 WL 3166533, at *12-*13 (collecting cases rejecting this argument); *Florida Evergreen Foliage v. E.I. DuPont de Nemours & Co.,* 165 F. Supp. 2d 1345, 1356-58 (S.D. Fla. 2001) ("[T]he fact that Plaintiff-Growers are not DuPont shareholders and therefore cannot bring a securities fraud claim against DuPont does not preclude the use of Section 107 to bar their claim" when it could have been brought "by a [different] plaintiff with proper standing[.]"), *affirmed on other grounds sub nom. Green Leaf Nursery v. E.I. DuPont de Nemours & Co.,* 341 F.3d 1292 (11th Cir. 2003); *Columbraria Ltd. v. Pimienta,* 110 F. Supp. 2d 542, 548 (S.D. Tex. 2000) (RICO bar applied even though plaintiff was time-barred from suing under Rule 10b-5).

[12]    Even if the *Taft* and *Grand* plaintiffs had, in fact, filed their suits after Plaintiffs filed the original action in New Jersey, the salient point is that those other lawsuits advanced securities claims based on the same conduct that Plaintiffs' RICO claim relies on and are therefore persuasive evidence that that conduct "would have been actionable as fraud in the purchase or sale of securities."  18 U.S.C. § 1964(c). The relative timing does not matter, but if it did, the fact is that both *Taft* and *Grand* were filed *almost two years before* Plaintiffs' case.  *See Taft v. Ackermans*, Case No. 02-cv-7951 (S.D.N.Y., filed Oct. 2002); *Grand v. Nacchio*, Case No. C-2002-5348 (Pima Co., Arizona Superior Cr., filed Oct. 2002).

improper and fraudulent business and accounting practices to prop up KPNQwest's value, and thereby Qwest's own value. That fact demonstrates that Plaintiffs' allegations "would have been actionable as fraud in the purchase or sale of securities." 18 U.S.C. § 1964(c). *See, e.g., Bald Eagle*, 189 F.3d at 328 (after comparing similarities between an SEC securities fraud action and a RICO claim, court concludes that the "same . . . scheme is at the heart of this RICO action").[13]

Accordingly, Plaintiffs' RICO claim is barred by the PSLRA and should be dismissed. Any suggestion that depriving Plaintiffs of a treble damages RICO claim is tantamount to leaving them without a remedy is clearly erroneous since Plaintiffs remain free to pursue their multi-billion dollar Dutch law claims.

### B. Equitable tolling does not save Plaintiffs' untimely RICO claim.

Plaintiffs concede that, absent equitable tolling, the four-year statute of limitations bars their RICO claim under the general federal rule that a "dismissal without prejudice leaves the parties as though the action had never been brought." *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 961 (10th Cir. 1991) (*abrogation on other grounds recognized by Keeler v. Cereal Food Processors*, 250 Fed. Appx. 857, 860-61 (10th

---

[13] *See also, e.g., Eagletech,* 2008 WL 3166533, at *12 ("When facts underlying an SEC action are the same as the facts underlying a federal RICO action, the PSLRA bar applies."); *Florida Evergreen Foliage*, 165 F. Supp. 2d at 1356-57 (in dismissing RICO claims, court compared RICO claims with a shareholder action to determine if the predicate acts were actionable as securities fraud); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481, 487 (E.D. Pa. 2000) ("[T]he underlying financial improprieties are actionable as securities fraud, as clearly demonstrated by the ERISA claim and the Pennsylvania [state law securities fraud] complaint as a whole."); *Tyrone Area Sch. Dist. v. Mid-State Bank & Trust Co.*, Case No. Civ. 98-881, 1999 WL 703729, at *4 (W.D. Pa., Feb. 9, 1999) ("[t]hat the conduct involved in the . . . scheme is actionable under securities laws is evidenced by the SEC's commencement of a suit for violations of federal securities laws" based on the conduct alleged in the RICO claims).

Cir. 2007).[14]  And Plaintiffs do not dispute that, although they could have done so, they

failed to seek any conditions on the *forum non conveniens* dismissal.

Equitable tolling is not available here for four reasons.  First, Plaintiffs cannot

satisfy one of the prerequisites for equitable tolling because their New Jersey complaint

was not a "defective pleading."  Second, equitable tolling is not available where, as

here, defendants have been prejudiced by the delay.  Third, Plaintiffs' failure to act to

preserve or protect their rights militates against equitable tolling.  Finally, equitable

tolling is not available because dismissal of the RICO claim would leave Plaintiffs free to

pursue their Dutch law claims.

### 1. Plaintiffs do not qualify for equitable tolling because their New Jersey complaint was not a "defective pleading."

Plaintiffs' New Jersey complaint was not a "defective pleading" and therefore

does not qualify for equitable tolling.  *See Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89,

96 (1990) (holding that, absent trickery that induced plaintiff to delay filing suit, tolling is

appropriate only "where the claimant has actively pursued his judicial remedies by filing

a *defective pleading* within the statutory period") (emphasis added).  A complaint

dismissed on *forum non conveniens* grounds is not a "defective pleading" for tolling

---

[14]    Plaintiffs attempt to evade this long-settled rule by arguing that *Brown* is "readily distinguishable"
because the dismissal in *Brown* was voluntary.  (Opp. at p. 40.)  While the dismissal in *Brown* was
voluntary, Plaintiffs offer no response to the other cases cited in our opening brief which hold that "it is
irrelevant that the dismissal of [the] first complaint without prejudice was 'involuntary' rather than
'voluntary.'"  *O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006) ("In such cases, dismissal of
the original suit, even though labeled as without prejudice, nevertheless may sound the death knell for
the plaintiff's underlying cause of action if the sheer passage of time precludes the prosecution of a new
action.") (quotation and citation omitted); *Chico-Velez v. Roche Prods., Inc.*, 139 F.3d 56, 59 (6th Cir.
1998) (holding that involuntary dismissal of an earlier-filed, timely complaint did not justify equitable
tolling and repeating the rule that "a prescriptive period is not tolled by filing a complaint that is
subsequently dismissed without prejudice").

purposes, because a complaint "timely filed in the correct court" is not "'defective' in the sense used by the *Irwin* Court." *Galbreath v. Dudas*, Case No. 04-2222, 2006 WL 156701, at *3 (D.D.C., Jan. 20, 2006) (complaint was dismissed without prejudice; rather than file a new complaint within the statute of limitations, plaintiff unsuccessfully appealed the dismissal; the statute ran during the appeal; and the court dismissed the later-filed amended complaint as untimely, rejecting application of equitable tolling).  As the court noted, "this case is not like those in which a technical defect has prevented a litigant from filing his claim in time," because "only upon a motion to dismiss did [Plaintiff's] complaint become vulnerable." *Id.* at *2.  Here, because Plaintiffs' complaint in New Jersey was dismissed on *forum non conveniens* grounds, it was not a defective pleading.  Thus, Plaintiffs cannot now rely on it for tolling purposes.[15]

### 2. Equitable tolling is not warranted because Defendants have been prejudiced by the delay.

Equitable tolling should be denied because Defendants have been prejudiced by Plaintiffs' delay.  "[A]bsence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply . . . ." *Baldwin County Welcome Ctr. v. Brown*, 446 U.S. 147, 152 (1984); *Minton v. Buckeye Rural Elec. Coop., Inc.*, Case No. 05-CV-391, 2006 WL 2583348, at *3 (S.D. Ohio, Sept. 6, 2006) ("[I]f the Court tolled the statute of limitations, Buckeye would be forced to rely on employees who are currently experiencing difficulties in remembering key events when defending

---

[15]   Plaintiffs' reliance on *Reed v. Norfolk and W. Ry. Co.*, 635 F. Supp. 1166 (N.D. Ill. 1986), is misplaced.  In that case, unlike this one, the plaintiff actually obtained a conditional dismissal but failed to file promptly in the right court and the court dismissed the claim as time-barred.  *Id.* at 1168-69.

against Minton's claims.  As a result, the Court concludes that Buckeye would be prejudiced were the Court to utilize the doctrine of equitable tolling.").  Here, in addition to the general problem of fading witness recollections concerning complex transactions that occurred 7-10 years ago, at least one key witness—Mark Iwan, Arthur Andersen's KPNQwest engagement partner and one of the witnesses Plaintiffs themselves identify as key to the case (Opp. at 13 n.2)—has become unavailable due to a serious medical condition. *See* accompanying Declaration of Laurence Iwan and Exhibit A to the accompanying Declaration of Kenneth Rossman (Aug. 4, 2008 Order quashing subpoena directed to Mr. Iwan).

### 3. *Equitable tolling is not warranted because the Plaintiffs failed to act diligently to protect their rights.*

Plaintiffs are also not entitled to equitable tolling because of their failure to take readily available *legal* steps to preserve their claim.  *Baldwin County*, 446 U.S. at 151 ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").  The Tenth Circuit has held that "equitable tolling does not apply when the plaintiff has 'separate, distinct, and independent' remedies, and has simply slept on his right with regard to one of them."  *Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006) (citing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 461, 465-66 (1975)).

Although Plaintiffs could have asked Judge Brown or the Third Circuit to condition the *forum non conveniens* dismissal upon a tolling or waiver of the statute of limitations or to transfer the case instead of dismissing it, they did none of those things. Instead, they made tactical choices to file in New Jersey and to litigate their asserted

22

right to proceed in that forum all the way to the Supreme Court, while the statute ran on their claim.  The consequence of their tactical choices is that the statute of limitations now bars their RICO claim.  *See*, *e.g.*, *Justice v. United States*, 6 F.3d 1474, 1480 (11th Cir. 2003) (affirming a limitations dismissal and refusing to apply equitable tolling where the plaintiff "could have pursued several legal avenues after the dismissal of his original action" to make sure that a subsequent action was timely, such as alerting the "district court that because the statute of limitations had expired, the dismissal without prejudice would operate as a dismissal with prejudice" or presenting those arguments in an appeal).  In *Galbreath*, the court held that the plaintiff's failure either to timely file a new complaint or to seek relief under Rule 60 precluded equitable tolling:

> Galbreath's response to the motion to dismiss and to my order of dismissal more closely resembles the case of a litigant who has "failed to exercise due diligence in preserving his legal rights."  *Irwin,* 498 U.S. at 96 . . . .  He did not raise the statute of limitations issue before the dismissal order was issued, nor . . . did he move after the order was issued for reconsideration or for relief under Rule 60 that would have allowed the filing of an amended complaint . . . .  "Manifest injustice does not exist where, as here, a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered."

2006 WL 156701, at *3 (internal citation omitted, quoting *Ciralsky v. C.I.A.*, 355 F.3d 661, 673 (D.C. Cir. 2004)).

### 4.  *Equitable tolling is not warranted because dismissal of the RICO claim would leave Plaintiffs with adequate remedies.*

"Traditional equitable principles preclude a court from invoking equitable tolling . . . when the party seeking relief has an adequate legal or statutory remedy to avoid the consequences of the statute of limitations."  *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (affirming limitations dismissal in a Federal Tort Claims Act case of

second untimely complaint where initial timely complaint was dismissed for failure to timely serve the government).  Here, dismissal of their RICO claim would leave Plaintiffs free to pursue their multi-billion dollar Dutch law claims.

### C.  Plaintiffs lack standing to pursue the RICO claim.

The gist of Plaintiffs' RICO claim is that Defendants unlawfully caused KPNQwest to take on debt that it could not pay by fraudulently inflating KPNQwest's apparent profitability.  Plaintiffs do not deny that the entities that loaned KPNQwest money on the strength of those supposedly inflated numbers—the bondholders and the lenders—have themselves already advanced securities and fraud claims against the Defendants and others, such as KPN.  Those purportedly defrauded entities, rather than KPNQwest which had the benefit of the funds it raised from them, are more directly injured and, under the trio of Supreme Court cases we cited in our opening brief, they are the proper plaintiffs in any RICO case, futile though any such claim would be given the clear applicability of the PSLRA RICO bar.  Under these circumstances, where there are more direct victims who have actually sued (and settled) the concerns about duplicative recovery that have led the Supreme Court to sharply cut back RICO standing apply with particular force.  *See* Opening Br. at 35-39.

As for the viability of deepening insolvency claims, Plaintiffs concede that deepening insolvency is no longer a valid cause of action but assert that it may serve as a measure of damages.  To support this, they rely on a handful of outdated cases that are, as we showed in our opening brief, very much in a vanishingly small minority. Opening Br. at 39-42.  Only two of those cases (*Schacht* and *Allard*) even involved

RICO claims[16] and neither of those—dating to 1983 and 1996, respectively—dealt with the inconsistency between deepening insolvency as a measure of damages and the views on the proper scope of RICO damages expressed in *Sedima, Holmes, Anza*, and their progeny. By definition, in a fraud-based case like this one, deepening insolvency damages imply more directly injured plaintiffs—the allegedly defrauded creditors—whose existence precludes Plaintiffs from having standing to pursue such a claim. Nor did either court have occasion to address the many sharp criticisms by courts and commentators of this deeply flawed theory in the years since they were decided.

Thus, it is unsurprising that recent caselaw rejects deepening insolvency as a measure of damages in RICO cases. *See, e.g.*, *In re CitX Corp.*, 448 F.3d 672, 677 n.8 (3d Cir. 2006) (rejecting deepening insolvency as a valid "theory of damages for an independent cause of action such as malpractice" or "as a valid theory of damages for any other cause of action, such as fraud"); *In re Jamuna Real Estate, LLC,* 392 B.R. 149, 172 (Bankr. E.D. Pa. 2008) ("even assuming that the Bankruptcy Trustees[] otherwise had RICO standing, they could not recover damages for an increased level of insolvency").

## **CONCLUSION**

This Court should dismiss on *forum non conveniens* grounds or, if it does not, should dismiss Plaintiffs' RICO claim for failure to state a claim.

---

[16] The *Allard* court's cursory discussion of deepening insolvency as a damages theory was, to the extent it can be read as extending to the RICO claims rather than the state-law claims, pure dictum since the court dismissed the RICO claims on other grounds. *Allard v. Arthur Andersen & Co.,* 924 F. Supp. 488, 497 (S.D.N.Y. 1996).

Dated: July 15, 2009.          Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

_____/s/Kenneth F. Rossman IV_____
Jonathan H. Sherman*
Jonathan M. Shaw*
William C. Jackson
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile:   (202) 237-6131
E-mail: jsherman@bsfllp.com
E-mail: jshaw@bsfllp.com
E-mail: wjackson@bsfllp.com

Kenneth F. Rossman IV
ROTHGERBER, JOHNSON & LYONS LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, Colorado 80202
Telephone: (303) 628-9584
Facsimile:   (303) 623-9222
E-mail: krossman@rothgerber.com

***Attorneys for Defendant Qwest
Communications International Inc.***
*not admitted in this District

HARNIK & FINKELSTEIN LLP

____/s/Ira A. Finkelstein_____
Ira A. Finkelstein
645 Fifth Avenue
Suite 703
New York, New York 10022
Telephone: (212) 599-7575
Facsimile:   (212) 867-8120
E-mail: finkelstein@harnik.com

***Attorneys for Defendant John A. McMaster***

26

VANDENBERG & FELIU, LLP

___/s/Jeffrey E. Gross_____
Jeffrey E. Gross
110 East 42nd Street, Suite 1502
New York, New York 10017
Telephone: (212) 763-6800
Facsimile:   (212) 981-9835
E-mail:   Jgross@vanfeliu.com

**Attorneys for Defendant Robert S. Woodruff**

STERN & KILCULLEN, LLC

____/s/Joel M. Silverstein_____
Joel M. Silverstein
75 Livingston Ave.
Roseland, New Jersey 07068
Telephone: (973) 535-1900
Facsimile:  (973) 535-9664
Email:  jsilverstein@sgklaw.com

**Attorneys for Defendant Joseph P. Nacchio**

27

## CERTIFICATE OF SERVICE

I certify that on this 15th day of July, 2009, the foregoing was served on the

following through the Court's electronic filing transmission facilities:

Richard W. Daily
RICHARD W. DAILY LLC
621 17th Street, Suite 1535
Denver, Colorado 80293

Jeffrey E. Gross
VANDENBERG & FELIU, LLP
110 East 42nd Street, Suite 1502
New York, New York 10017

Ira A. Finkelstein
HARNIK WILKER & FINKELSTEIN LLP
Olympic Tower
645 Fifth Avenue, Suite 703
New York, New York 10022

Clifton Elgarten
Daniel W. Wolff
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Joel M. Silverstein
STERN & KILCULLEN, LLC
75 Livingston Ave.
Roseland, New Jersey 07068



/s/ *Kenneth F. Rossman IV*