**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 09-cv-00162-REB-KLM

E.T. MEIJER, In Capacity as Trustee in Bankruptcy for KPNQwest N.V., and
MARCEL WINDT, In Capacity as Trustee in Bankruptcy for KPNQwest, N.V.,

       Plaintiffs,

v.

QWEST COMMUNICATIONS INTERNATIONAL, INC.,
JOHN A. McMASTER,
JOSESPH P. NACCHIO, and
ROBERT S. WOODRUFF,

       Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

**Blackburn, J.**

       This matter is before me on the **Defendants' Motion To Dismiss and
Supporting Memorandum** [#22][1] filed May 1, 2009.  The plaintiffs filed a response
[#29], and the defendants filed a reply [#32].  I grant the motion.

## I.  JURISDICTION

       I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and
§ 1332 (diversity).

## II.  FACTS & PROCEDURAL BACKGROUND

       In 1998, Qwest Communications International, Inc., and Koninklijke KPN, N.V.
(KPN) formed KPNQwest.  Qwest is a U.S. corporation.  KPN is a Dutch

---

[1]   "[#22]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

telecommunications company.  KPNQwest was formed as a joint venture seeking to

provide telecommunications services in Europe.  Four years later, KPNQwest filed for

bankruptcy protection in the Netherlands.  The plaintiffs in this case are Dutch lawyers

who were appointed by the Dutch bankruptcy court to serve as the trustees of

KPNQwest's bankruptcy estate.

The plaintiffs' complaint [#1] consists of 196 pages.  For the purpose of this

order, only a brief summary of the plaintiffs' claims is necessary.  The plaintiffs allege

that, at the relevant times, Qwest used in the United States a business model of

constructing a fiber-optic network that was financed largely by the sale of portions of the

network to competitors or to others before construction of the network was completed.

According to the plaintiffs, sale of rights to use the network, known as indefeasible rights

of use or IRUs, generated revenue that allegedly reduced the need to turn to capital

markets to finance network construction. By the end of the 1990s, the plaintiffs allege

that a glut of fiber-optic cable capacity reduced demand for Qwest's fiber and its retail

products.  The plaintiffs allege that Qwest employed a variety of techniques to conceal

the absence of real revenue and cash flow.  Those techniques allegedly included

deceptive accounting for IRU sales.

The plaintiffs allege further that Qwest caused KPNQwest to engage in fictive

IRU sales and swaps and similar deceptive accounting for IRU sales.  The plaintiffs

contend that the defendants led KPNQwest to believe erroneously that KPNQwest was

thriving as a business when it was not thriving.  The defendants allegedly perpetrated

this deception on KPNQwest from November, 1999, to May, 2002, when KPNQwest

filed bankruptcy.  According to the plaintiffs, the defendants perpetrated this alleged

fraud for the benefit of Qwest.  Qwest's motivations were allegedly three-fold: (1) If the

KPNQwest business model was exposed as a failure, then questions about the viability

of Qwest's business model in the United States would have arisen; (2) the deception

propped up the apparent value of Qwest's holdings in KPNQwest at a time crucial for

Qwest; and (3) both directly and indirectly, Qwest used KPNQwest as a counter-party in

IRU transactions, and Qwest had a continued need for such counter-parties.

Based on allegations of fact with much greater detail than this summary, the

plaintiffs assert a claim under the Racketeer Influenced and Corrupt Organizations Act

(RICO), 18 U.S.C. §§ 1961 - 1968.  The plaintiffs assert also a claim under Dutch law,

which claim is captioned as mismanagement and breach of duty.  *Complaint* [#1], pp.

181 - 190.  This claim is brought under the Dutch Civil Code.  In the complaint, the

plaintiffs cite several specific sections of the Dutch Civil Code as bases for various

aspects of this claim.

Related litigation is ongoing in Holland.  The defendants cite seven Dutch cases

in support of their motion and include with their motion declarations describing the

litigation.

(1)  **Enterprise Chamber, a branch of the Dutch Civil Court**  - This court has jurisdiction over corporate mismanagement claims and is investigating the causes of KPNQwest's bankruptcy. All of the defendants, plus KPN, KPN's nominees to KPNQwest's Board, and others are involved in this proceeding.  The plaintiffs note that this proceeding examines only the time frame between January and May of 2002, and does not address damages.

(2) **Preliminary witness examination** - These proceedings consist of certain pre-filing investigative/discovery proceedings, overseen by the Dutch courts at the instance of an organization representing KPNQwest shareholders, in the course of which witnesses have testified in court in a proceeding referred to as a preliminary witness examination.

(3) **Cargill litigation** - A significantly related lawsuit brought by the successors-in-interest to KPNQwest's lenders against Qwest, Nacchio, McMaster, KPN, and others to recover unpaid proceeds of a loan made to KPNQwest in 2002 that involves some of the same issues as this litigation, namely the Defendants'

representations concerning KPNQwest's financial condition and the mismanagement of KPNQwest.

(4) **Third party discovery  #1** - A separate action for third-party discovery from KPNQwest's lenders to allow Qwest, Nacchio, McMaster, KPN and others defend themselves in the lawsuit identified in item 2), above.  The plaintiffs indicate that this proceeding is related directly to the Cargill litigation.

(5) **Third party discovery  #2** - A separate action for third-party discovery from KPNQwest's financial advisor and the agent of KPNQwest's lenders to allow Qwest, Nacchio, McMaster, KPN and others to defend themselves in the lawsuit identified in item 2), above.  The plaintiffs indicate that this proceeding is related directly to the Cargill litigation.

(6) **Insurance coverage litigation** - Insurance coverage litigation that names all of the individuals in this lawsuit and contains many of the same issues raised in this litigation.
.

(7) **KPNQwest bankruptcy** - The ongoing KPNQwest bankruptcy.

Previously, the plaintiffs filed their complaint in the United States District Court for

the District of New Jersey.  That court dismissed the plaintiffs' case based on *forum non*

*conveniens*, concluding that consideration of the relevant factors militates strongly in

favor of resolving the plaintiffs' claims against the defendants in the Dutch courts.

***Windt v. Qwest Communications Intern., Inc.***, 544 F.Supp.2d 409 (D.N.J. 2008).

The district court's ruling was upheld by the United States Court of Appeals for the Third

Circuit.  ***Windt v. Qwest Communications Intern., Inc.***,529 F.3d 183 (3rd Cir. 2008).

The plaintiffs then filed their complaint in this court.  In their present motion, the

defendants again seek dismissal of the plaintiffs' claims based on *forum non*

*conveniens.*

The defendants contend that the rulings of the United States District Court for the

District of New Jersey and the Third Circuit concerning *forum non conveniens* are

binding on this court.  Even if those rulings are not binding, the defendants' argue, the

analysis is the same and still dictates dismissal of the plaintiffs' claims because they

should be resolved in the Dutch courts.  The plaintiffs argue that the *forum non conveniens* analysis differs significantly because their claims are pending now in Colorado rather than in New Jersey, and that their claims should not be dismissed based on *forum non conveniens.*

### III.  ANALYSIS

### A.  Background

Although there is significant authority in support of the defendants' contention that issue preclusion is, in some circumstances, applicable to a prior *forum non conveniens* ruling, I conclude that a new analysis of the *forum non conveniens* issue is required here.  Notably, addressing the *forum non conveniens* issues, the Third Circuit said "the conclusion we reach in this case does not necessarily mean that this action may not be maintainable in another federal district."  ***Windt***, 529 F.3d at 192.  This action is pending now in a different federal district. Thus, in this order I address the *forum non conveniens* issues from the perspective of the District of Colorado.  Although there may be some minor differences between the law of the Third Circuit and the law of the Tenth Circuit on  *forum non conveniens*, any such differences are inconsequential. The law applied to this case by the District of New Jersey and by the Third Circuit is driven largely by law established by the United States Supreme Court.  As discussed below, the analysis applied by the District of New Jersey translates readily to this case as it is postured now in the District of Colorado.

The plaintiffs argue that the New Jersey district court and the Third Circuit compared New Jersey and the Netherlands, and not the United States and the Netherlands, in their analysis of the *forum non conveniens* issue.  The plaintiffs contend that the New Jersey court "neither considered nor decided how Colorado (or even the

United States generally) compares in terms of convenience to the Netherlands."
*Response* [#29], p. 8.  For obvious reasons, the New Jersey district court and the Third
Circuit did not analyze this case from a Colorado vantage point.  However, both courts
repeatedly analyzed most of the relevant factors by comparing the United States
generally and the Netherlands.  Those comparisons are thorough and accurate and
they carry great weight in my analysis.  For the sake of efficiency, I will summarize here
the analyses undertaken by the New Jersey district court, and upheld by the Third
Circuit, to the extent those analyses compare the United States and the Netherlands in
relationship to the relevant factors.

To the extent the New Jersey district court analyzed the relevant factors from a
New Jersey perspective, as opposed to a Colorado perspective, I am constrained to
analyze the relevant factors from a Colorado perspective.  Although the analysis differs
on some points when this case is viewed from a Colorado perspective, I conclude
ultimately that the *forum non conveniens* analysis militates strongly in favor of resolving
the plaintiff's claims against the defendants, as asserted in this case, in the Dutch
courts.

### B.  Forum non Conveniens Analysis

In the New Jersey case, the Honorable Garrett E. Brown, Jr., Chief United States
District Judge for the District of New Jersey, engaged in a comprehensive analysis of
the relevant *forum non conveniens* factors.  Chief Judge Brown relied on the factors
outlined by the United States Supreme Court in **Gulf Oil Corp. v. Gilbert**, 330 U.S. 501
(1947) and **Piper Aircraft Co. v. Renyo**, 454 U.S. 235 (1981).  I summarize here the
key points of Chief Judge Brown's analysis.  Appropriately, Chief Judge Brown analyzed
five basic factors relevant to the *forum non conveniens* analysis: (1) availability of an

adequate alternative forum and application of foreign law; (2) degree of deference to be

accorded to the plaintiffs' choice of forum; (3) balance of public interests; (4) balance of

private interests; and (5) oppressiveness and vexation to the defendants. ***Windt v.***

***Qwest Communications Intern., Inc.***, 544 F.Supp.2d 409, 419-429 (D.N.J. 2008).

The defendants' bear the burden of proof to establish that these factors weigh in favor

of dismissal based on *forum non conveniens*.  ***Piper Aircraft Co. v. Reyno***, 454 U.S.

235, 258 ("defendants must provide enough information to enable the District Court to

balance the parties' interests.").

### 1.  Availability of an adequate alternative forum

The threshold questions in a *forum non conveniens* analysis are (1) is there is an

adequate alternative forum?; and (2) does foreign law apply?  ***Yavuz v. 61 MM, Ltd.***,

465 F.3d 418, 426 (10th Cir. 2006).  If both questions are answered affirmatively, then

the court must analyze the relevant public and private interest factors. *Id*. at 426.  Here,

the plaintiffs concede that both questions are answered affirmatively. *Response*, pp. 9-

10.  The Dutch courts present an adequate alternative forum, and Dutch law applies to

the plaintiffs' claims under the Dutch Civil Code.

### 2.  Degree of deference to be accorded to the plaintiffs' choice of forum

Ordinarily, there is a strong presumption in favor of hearing a case in the

plaintiff's chosen forum. *Id*.  However, a foreign plaintiff's choice of forum warrants less

deference. *Id*.  When the plaintiff is foreign, the private and public interest factors need

not so heavily favor the alternate forum. *Id*.  When the plaintiff is foreign, the

defendants' burden of proof on *forum non conveniens* issues is reduced somewhat

because, in this circumstance, the private and public interest factors need not so heavily

favor the alternate forum. *Id*.

Chief Judge Brown noted that the plaintiffs are Dutch attorneys appointed by a Dutch court to act as bankruptcy trustees for a Dutch entity.  Aside from this litigation, the plaintiffs have neither personal nor business contacts with the United States. *Windt*, 544 F.Supp. 2d at 419.  Nothing in the record indicates that the plaintiffs have any personal or business contacts with Colorado, independent of this litigation. Generally, when a plaintiff chooses a forum foreign to that plaintiff, the plaintiff's forum choice is not entitled to automatic deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).  In this circumstance, a court must consider whether there is some evidence of convenience for the foreign plaintiff, even if it is not in the form of the foreign plaintiffs' contacts with the forum.

Chief Judge Brown concluded that

> It is illogical for a bankruptcy trustee to assert that it would be more convenient to bring an action thousands of miles away, while this trustee: (a) has to play a part in the related bankruptcy proceedings in his home forum, and (b) has his defendants already brought into his home forum on two other actions which are nearly identical in nature to the action the trustee desires to pursue, and in one of which the trustee has already been ordered to appear. Since one can hardly perceive any convenience in having multiple massive litigations on both sides of the Atlantic, this Court discerns little evidence of convenience to Plaintiffs in Plaintiffs' decision to file this action with this Court and, thus, accords Plaintiffs' forum selection a low degree of deference.

*Windt*,544 F.Supp.2d at 421.  Addressing the same issue, the Third Circuit noted that the state of New Jersey was the home of two of the individual defendants.  The court noted, however, that New Jersey

> is not the home forum of the corporate defendant or another individual defendant . . . . There is also no indication that evidence is concentrated in New Jersey, nor is there an indication that a substantial amount of conduct giving rise to the instant dispute occurred in New Jersey.

*Windt*, 529 F.3d at 183.  The Third Circuit upheld Chief Judge Brown's decision to

accord the plaintiffs' choice of forum a low degree of deference. *Id*.

Now that this case has been filed in Colorado, the analysis of this factor changes somewhat. Qwest is headquartered in Denver, and one of the individual defendants is a resident of Colorado. The plaintiffs cite several facts that tie this dispute to Colorado. They note that Qwest is headquartered in Colorado; Colorado is the place where the defendants received the benefits of their alleged unlawful conduct; Colorado is the location from which a substantial part of the unlawful conduct alleged in the complaint was undertaken by Qwest and the other defendants; many e-mails, phone calls and other communications directing or regarding KPNQwest were sent from Colorado; relevant documents are in Colorado; and some witnesses continue to reside in Colorado. *Response*, pp. 11-12.

Taking a broad view of this lawsuit, I conclude that these Colorado ties increase only marginally the deference to be accorded to the foreign plaintiffs' choice of forum. The fact that some of the alleged wrongful conduct, including the initiation of various communications, took place in Colorado carries only moderate significance. The plaintiffs contend that this conduct was directed at KPNQwest in the Netherlands. Most of the communications at issue had a sender or recipient in the Netherlands and a sender or recipient in Colorado. The defendants' alleged receipt of benefits is relevant to the plaintiffs' claims only obliquely. The plaintiffs seek to prove harm to KPNQwest, a Dutch entity, caused by the defendants' alleged conduct, which allegedly was directed at KPNQwest. Proof of the nature of the benefits allegedly received by the defendants may be relevant to show the defendants' motive, but that issue is much less central to this case than is the nature of the defendants' alleged conduct directed toward KPNQwest in the Netherlands and the alleged harm that conduct allegedly caused

KPNQwest to suffer in the Netherlands.

The fact that some witnesses are Colorado residents carries little weight as well. Chief Judge Brown concluded that the bulk of the witnesses desired by the plaintiffs in this action probably would be engaged in the closely related Dutch litigation. *Windt*, 544 F.Supp.2d at 427. Nothing in the record of the above-captioned case contradicts this conclusion. The presence of some witnesses in Colorado does not weigh heavily.

Similarly, the fact that some relevant documents are in Colorado does not weigh heavily. As the plaintiffs note, Qwest has assembled a database of 100 million pages of potentially relevant information. *Response*, pp. 12-13. Of course, documents in this form readily can be transmitted anywhere in the world. As Chief Judge Brown noted, in this case the burden of producing and examining documents is essentially equal no matter where the case is litigated. *Windt*, 544 F.Supp.2d at 425-426 n. 24.

In short, although this case has more ties to Colorado than it had to New Jersey, considering the case as a whole, the evidence that Colorado provides the plaintiffs' with substantial convenience is very weak.

The plaintiffs cite also a treaty between the United States and the Netherlands as a basis to accord the plaintiffs' greater deference in the *forum non conveniens* analysis. The treaty provides that Dutch nationals will be "accorded national treatment with respect to access to the courts of justice" both in pursuit and in defense of their rights. *Treaty of Friendship, Commerce and Navigation between the Kingdom of the Netherlands and the United States of America*, art. V, March 27, 1956, 8 U.S.T. 2043. As the defendants note, however, this treaty does not automatically entitle the plaintiffs to greater deference in their choice of forum. "(T)he selection of a U.S. forum by a U.S. citizen living abroad would be entitled to less deference than the choice of the same

forum by a citizen residing in the forum because with respect to the expatriate U.S. citizen it would be less reasonable to assume the choice of forum is based on convenience." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2nd Cir. 2003). Here, the fact of the treaty does not provide support to the otherwise weak assumption that the Dutch plaintiffs' choice to sue in Colorado is based on the plantiffs' convenience. Similarly, the fact that the United States Bankruptcy Code includes sections encouraging U.S. courts to assist foreign bankruptcy trustees also does not provide such support. 11 U.S.C. §§ 1509, 1515.

In sum, considering the ties this case has to Colorado and the other relevant factors, I conclude that the plaintiffs' forum choice is entitled only to an extenuated degree of deference. The circumstances of this case simply do not support the conclusion that the plaintiffs' chose to sue in the District of Colorado because this forum is convenient for the plaintiffs.

<u>3. Balance of public interests</u>

Recently, the Tenth Circuit outlined the public interest factors relevant to a *forum non conveniens* analysis:

> (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.

*Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 426 (10th Cir. 2006). Nothing in the record of this case addresses the first factor. Although stated differently, and in a different order, the remaining three factors essentially are the same factors analyzed by Chief Judge Brown in *Windt*.

> The public interests to be considered include: (1) having local disputes settled locally; (2) avoiding problems of applying foreign law; and (3) avoiding burdening jurors with cases that have no impact on their community.

*Windt*, 544 F.Supp.2d at 422.  With a few minor exceptions, Chief Judge Brown's analysis of the relevant public interest factors is applicable to this case, even when viewed from a Colorado perspective. The plaintiffs argue that a Colorado forum and jury are appropriate

> for a lawsuit that, at its core, is based on the alleged wrongdoing by one of the major corporate enterprises in the region, carried out from its headquarters.  The United States in general, and any given State in which the conduct occurs more particularly, has (sic) an obvious interest in regulating fraudulent conduct within its borders.

*Response* [#29], p. 16.  The plaintiffs asserted a similar argument in *Windt*. 544 F.Supp.2d at 423.

> It appears that Plaintiffs misread the applicable tests. The interest of having local disputes settled locally: (1) should be read jointly with that of avoiding burdening jurors with cases that have no impact on their community, and (2) focuses on the nature of the dispute and the effect that the outcome might have on the community of the local jurors. The gist of the case at bar concerns the allegations of fraud and mismanagement of a Dutch business entity by a board member and executives of that corporation, and by that corporation's controlling holder.

> \*   \*   \*   \*

> The interest of having disputes settled locally and avoiding burdening jurors with cases that have no impact on their community focuses on the effect that the resolution of the case would have on the local community, its citizenry, its domestic financial markets, and so on. Therefore, the United States and the community of the District of New Jersey have little interest in the resolution of this case.  Conversely, the Netherlands has strong contacts with this case, since that country has substantial interests in adjudicating claims brought by the trustees of its own corporation (which was created as a joint-venture with another Dutch corporation), especially in view of the bankruptcy effect suffered by the local Dutch community consisting of KPNQwest's employees, shareholders, consumers of KPNQwest's product, as well as KPNQwest's suppliers and creditors. While indeed there could be creditors and similarly situated parties in the United States, and even in the state of New Jersey,

an international dispute, by definition, presumes such scenario.

*Id*. (footnotes and citations omitted).

Assuming the allegations in the complaint to be true, the resolution of this case will have some impact in Colorado because resolution of this case will affect some Colorado residents.  However, I agree with Chief Judge Brown that the considerations of settling local disputes locally and burdening jurors with disputes whose center of gravity lies elsewhere both weigh in favor of dismissal of this case.  As described by Chief Judge Brown, as quoted above, resolution of this case will have a much greater effect in the Netherlands than it will in the United States or in Colorado.

The factor that addresses the value of finding a forum familiar with the governing law also weighs against the plaintiffs.  The plaintiffs do not address this factor in any detail in this case, but they did in the New Jersey case.

> [The plaintiffs] assert that, since some of Plaintiffs' claims are based on RICO, the familiarity of this Court with this "unique ... statutory provision" renders this Court a more competent forum than the Enterprise Chamber of the Amsterdam Court of Appeals, or a like Dutch court, even though Plaintiffs "assert a Dutch law claim."  This Court disagrees. Federal courts have not afforded claims under federal securities law or RICO any special forum non conveniens treatment, and this Court has no reason to refuse to follow() suit.

*Windt*, 544 F.Supp.2d at 424.  As noted by Chief Judge Brown, the plaintiffs assert also at least two legal theories under Dutch law, mismanagement and breach of duty, and they allege that these wrongs were done in violation of numerous statutory provisions of the Dutch Civil Code.  *Complaint* [#1], pp. 181-192.  Paraphrasing Chief Judge Brown, it is not entirely clear to me why the plaintiffs designate the RICO statute "unique" and requiring special expertise, while apparently deeming numerous sections of Dutch Civil Code as requiring no legal savvy.  *Windt*, 544 F.Supp.2d at 425 n. 22.

Finally, I note that the plaintiffs cite the treaty of friendship and sections of the United States Bankruptcy Code, discussed above, as factors relevant to the public interest analysis. For the reasons discussed above, I find that neither the treaty nor the Bankruptcy Code sections carry significant weight in the analysis of the public interest factors.

Weighing the public interest factors together, I conclude that this court has no reason to believe that it is better equipped to deal with numerous Dutch statutory provisions than the Dutch court is to deal with one American statute. While Colorado has some interest in the dispute, largely because Qwest is headquartered in Colorado, the Dutch interest in this case is much more substantial. In this context, if this case remained in the District of Colorado, then local jurors improperly would be burdened by the need to resolve a matter having little impact on their community and a substantial impact on a foreign community. The balance of public interests factors augurs strongly in favor of the dismissal of plaintiffs' complaint.

### 4. Balance of private interests

The private interest factors relevant to a *forum non conveniens* analysis are:

> (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive.

*Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 426 (10th Cir. 2006). In this case, the fourth factor is not relevant. With the exception of the fourth factor listed above, Chief Judge Brown considered essentially the same factors.

> (1) ease of access to evidence; (2) the cost for willing witnesses to attend trial; (3) the availability of compulsory process; and (4) other factors that might shorten trial or make it less expensive.

*Windt*, 544 F.Supp.2d at 425.  From a Colorado perspective, Chief Judge Brown's analysis is persuasive.

One of the key types of evidence at issue in this case is documents.  The plaintiffs note that "Qwest's documents are here, KPNQwest's there [in the Netherlands]."  *Response* [#29], p. 14.  As I noted previously, Chief Judge Brown concluded that the burden of producing and examining documents is essentially equal no matter where the case is litigated.   *Windt*, 544 F.Supp.2d at 425-426 n. 24.

> The actual issue at hand, that is, the ease of access to documentary evidence, would not be affected if the case is litigated in the Netherlands, since Plaintiffs would still have to produce or make available for examination all Netherlands-located documents to Defendants, and Defendants would still have to produce or make available for examination all Colorado-located documents to Plaintiffs. The expenses and complexity associated with such production and examination appear to be the same regardless of whether the case is litigated in New Jersey or in Amsterdam. While this Court has little problem envisioning a scenario where the physical location of evidence might be of paramount importance, e.g., where the case involves a piece of real estate or non-transportable heavy or sensitive machinery, or a bed-ridden injured person, a "paper-trail" case like the one at bar does not appear to be amenable to substantial fluctuations of the "ease of access" factor.

*Id*. (parenthetical information omitted).  Particularly in view of the database of Qwest documents available to the parties, these conclusions apply equally to this case when viewed from a Colorado perspective.  The availability of documents essentially is a wash in the *forum non conveniens* analysis.

With regard to the cost of bringing willing witnesses to attend trial, and the availability of compulsory process, Chief Judge Brown's analysis again is persuasive.

> The next step in the balance of private interests inquiry is to examine two interrelated questions: (1) what would be the cost for willing witnesses to attend trial, and (2) is there a compulsory process in the Netherlands with respect to unwilling witnesses? The answer to the first question weighs heavily in favor of dismissal in view of the ongoing De Vereniging van Effectenbezitters and Cargill Financial Proceedings, since the bulk of the

witnesses desired by Plaintiffs (including those witnesses whom Plaintiffs designate as "central" and "relevant," see Opposition at 23-24), as well as the bulk of third-parties desired by Defendants are either already engaged in these actions or should, and therefore, probably would be engaged in view of the similarity of the claims. Therefore, the commute and lodging expenses associated with the need to call willing witnesses would be equal or less if only the United States-based witnesses are flown to the Netherlands for various Dutch proceedings in comparison with the scenario where: (a) the United States-based witnesses are flown to the Netherlands for the currently pending Dutch proceedings, plus (b) the Netherlands-based witnesses are flown to the United States for this Court's proceeding.

*Windt*, 544 F.Supp.2d at 427.

I conclude that the second scenario outlined by Chief Judge Brown, in which Dutch witnesses must be transported to the U.S. for the case being prosecuted in the U.S. and U.S. witnesses must be transported to Holland for the cases being prosecuted in Holland, is substantially more costly and less efficient than the alternative scenario, in which only U.S. witnesses need to cross the Atlantic Ocean.  Because the Dutch cases cannot be brought to the Untied States, such transportation of U.S. witnesses is unavoidable.  If this case is heard by the Dutch courts, however, transatlantic transportation of Dutch witnesses will be avoided.  The fact that this case now is pending in Colorado does not alter this analysis in any way.  The plaintiffs agree with Chief Judge Brown's conclusion that the Dutch courts and the courts of the United States have an equal ability to compel the attendance of non-party witnesses. *Response* [#29], p. 14; *Windt*, 544 F.Supp.2d at 427-428.  This factor weighs in favor of dismissal of this case on *forum non conveniens* grounds.

Chief Judge Brown's conclusions about the cost of translations also is relevant to my consideration of the logistics of documents and witness testimony in this case.

If the instant action is not dismissed, all documents and testimony in Dutch would have to be translated into English for the use of this Court, while all

> documents and testimony in English would have to be translated into
> Dutch for the use of the court in the Netherlands. Hence, there would be
> no document or testimony left untranslated. If, however, this action is
> brought in the Netherlands, the translation-related time and expenses
> would be obviously reduced, perhaps by half, by the need to translate only
> the documents drafted in English.

*Windt*, 544 F.Supp.2d at 429 n. 29.  Although Chief Judge Brown considered the issue

of the need for translations with regard to the question of whether this litigation is

oppressive and vexatious to the defendants, I conclude that this issue is relevant also to

the private interest analysis.  Consideration of the need for translations weighs in favor

of dismissal of this case on  *forum non conveniens* grounds.

The final factor in the private interests analysis is an assessment of all other

practical problems that make trial of the case easy, expeditious and inexpensive.

Addressing this factor, Chief Judge Brown noted the defendants' contention, which they

assert in this case also, that they intend to bring contribution claims against third-parties

in the Netherlands, including Koninklijke KPN, N.V. and its nominees to KPNQwest's

board.  I agree with Chief Judge Brown that this circumstance also weighs in favor of

the dismissal of this action on *forum non conveniens* grounds.

> The fact that the parties intended by Defendants for impleader are already
> made part to the De Vereniging van Effectenbezitters and Cargill Financial
> Proceedings suggests the likelihood of Defendants' legal actions against
> these parties. Moreover, if this Court is to presume that Defendants are to
> follow Plaintiffs' advice by initiating additional related legal actions, the
> possibility of a mushrooming cluster of suits in the Netherlands only
> supports dismissal of Plaintiffs' Complaint, so the court in the Netherlands
> could execute a joinder of actions, thus shortening the trial processes and
> making them less expensive.

*Windt*, 544 F.Supp.2d at 428.  This factor weighs in favor of dismissal of this case on

*forum non conveniens* grounds.

In sum, the balance of the private interests weighs in favor of dismissal on *forum*

*non conveniens* grounds.  The relative ease of access to sources of proof weighs in favor of dismissal, primarily because of the logistics of witnesses and translations discussed above.  The cost of litigating this case and the related Dutch cases on one side of the Atlantic Ocean, versus two sides of the Atlantic, also weighs in favor of dismissal.  Finally, the other practical issues presented, notably the prospect of contribution claims asserted by the defendants, also weighs in favor of dismissal of this case on *forum non conveniens* grounds.

### 5.  Oppressiveness and vexation to the defendants

(A) plaintiff's choice of forum should rarely be disturbed. However, when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case.

***Piper Aircraft Co. v. Reyno***, 454 U.S. 235, 241 (1981) (quoting ***Koster v. (American)***

***Lumbermens Mut. Cas. Co.***, 330 U.S. 518, 524 (1947)).

Addressing this factor, Chief Judge Brown concluded

(I)n the case at bar, Defendants are already involved in two litigations in Amsterdam, and in the very same court that would entertain Plaintiffs' Dutch action if Plaintiffs chose to sue Defendants in the Netherlands. Given these circumstances, it is not surprising that Defendants see Plaintiffs' litigation in New Jersey as "oppressive or vexatious," since Defendants would be forced to stretch their resources over both sides of the ocean by: (1) hiring different counsel to meet two different sets of bar admission requirements and two different sets of procedural rules; (2) losing the opportunity to seek joinder of actions; (3) flying witnesses and themselves across the Atlantic both ways on regular basis, thus incurring substantial travel and accommodation expenses; and (4) having to translate all relevant documents and testimony, etc. Viewed through the prism of conveniences available to Plaintiffs in Plaintiffs' home forum and potential dire exhaustion of Defendants' resources through a cluster of transatlantic litigations, Plaintiffs' action appears to be "oppressive or vexatious," and the balance of the private and public interest factors "clearly points towards trial in the alternative forum," thus, supporting

dismissal.

*Windt*, 544 F.Supp.2d at 429 (footnote and citation omitted).  The Third Circuit upheld

Chief Judge Brown's analysis and expanded on his analysis to some degree.  *Windt*,

529 F.3d at 195-198.  These analyses are in no way dependent on the pendency of this

case in the District of New Jersey versus the District of Colorado.  Rather, these

analyses are applicable equally to this case from a Colorado perspective.

I agree with both Chief Judge Brown's analysis and that of the Third Circuit.  On

that basis, I find and conclude that litigation of this case in the District of Colorado would

be both oppressive and vexatious to the defendants to a degree that is out of all

proportion to plaintiffs' convenience.

## IV.  CONCLUSION & ORDERS

Having considered the record in this case and all of the factors relevant to a

*forum non conveniens* analysis, I find and conclude that (1) foreign law applies to a

substantial portion of the plaintiffs' claims and an adequate alternative forum, the Dutch

civil courts, is available to resolve those claims; (2) considering the relevant factors, the

plaintiffs' choice of forum is entitled to a low degree of deference; (3) overall, the public

interest factors weigh in favor of dismissal; (4) overall, the private interest factors weigh

in favor of dismissal; and (5) litigation of this case in the District of Colorado would be

both oppressive and vexatious to the defendants to a degree that is out of all proportion

to plaintiffs' convenience.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendants' Motion To Dismiss and Supporting Memorandum**

[#22] filed May 1, 2009, is **GRANTED**; and

2.  That this case is **DISMISSED** without prejudice.

Dated March 31, 2010, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge